**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| LAWRENCE MARTIN EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:06-CV-1 CAS |
| | ) | |
| CHUCK DWYER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on several motions, including three motions to dismiss for failure to exhaust administrative remedies filed by various defendants, and a motion for summary judgment filed by the plaintiff. By Order dated November 1, 2007, the Court notified the parties that the motions to dismiss, filed under Rule 12(b)(6), Federal Rules of Civil Procedure, were converted to motions for summary judgment under Rule 56, Fed. R. Civ. P., because the parties submitted materials outside of the pleadings for the Court's consideration. The parties were given the opportunity to and have submitted supplemental materials supporting and in opposition to the motions, and this matter is ready for decision.

**I. Background**.

This is a prisoner civil rights action under 42 U.S.C. § 1983. The plaintiff is Lawrence Martin Edwards, a Missouri state prisoner, who alleges in his First Amended Complaint ("Complaint") that while he was incarcerated at Southeast Correctional Center ("SECC"), SECC Correctional Officer Tori Green coerced him into a sexual relationship and later asked another inmate, with whom she was also sexually involved, to harm plaintiff after he broke off the relationship and reported Green's actions to prison officials. Plaintiff alleges that SECC Superintendent Chuck Dwyer had knowledge

of defendant Green's actions and was grossly negligent in training, supervising, disciplining and dismissing her. Plaintiff asserts violations of his First, Eighth and Fourteenth Amendment rights, specifically denial of access to the courts, cruel and unusual punishment through forced and unwanted sexual activity, and knowing placement of plaintiff in close proximity to other inmates with the known desire to cause plaintiff serious physical injury. See Complaint at 2.

The defendants are Dwyer, Green, Tamara Cobbs, a Correctional Officer ("CO") at SECC; Laura Vance, Associate Superintendent of Offender Management at SECC; John Williams, a Functional Unit Manager at SECC; Cheryl Dowdy (sued as "C. Dowdy"), a classification caseworker at SECC; Dan Martinez, a Corrections Lieutenant at SECC; Steve Julian (sued as "Investigator Jules"), an investigator at SECC; and the Missouri Department of Corrections.[1] The individual defendants are sued in both their individual and official capacities.

Plaintiff opposes the motions for summary judgment and has filed motions for physical examination of defendant Green, for default judgment against defendants Vance and Cobbs, for discovery and production of documents, and for summary judgment against all of the non-defaulting defendants. For the following reasons, the Court will grant defendants Dwyer and Green's motions for summary judgment; deny as moot plaintiff's motion for a physical examination of defendant Green; grant in part and deny in part defendants Williams, Dowdy, Martinez and Julian's motion for summary judgment; dismiss plaintiff's claims against the Missouri Department of Corrections; deny plaintiff's motion for summary judgment without prejudice; and deny as moot plaintiff's motion for discovery.

---

[1]A Clerk's Entry of Default under Rule 55(a), Federal Rules of Civil Procedure, was entered as to defendants Vance and Cobbs on October 11, 2007. (Doc. 135) The Court will address plaintiff's motion for default judgment against Vance and Cobbs (Doc. 136) by separate order.

## II.  Legal Standard.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c).

Once the moving party has met his burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e).  Anderson, 477 U.S. at 257; City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir. 1988).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Additionally, this Court is "'not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990) (quoted case omitted).

With these standards in mind, the Court finds the following facts for purposes of the instant motions for summary judgment.

### III. Facts.[2]

1. Plaintiff Edwards is currently an inmate at the Crossroads Correctional Center in Cameron, Missouri. Edwards filed his Amended Complaint under 42 U.S.C. § 1983 alleging that while incarcerated at Southeast Correctional Center (SECC) in Charleston, Missouri, defendant Tori Green ("Green"), a corrections officer at SECC, violated his constitutional rights when she coerced him into a sexual relationship with her that lasted from an unspecified date in December 2004 until sometime in January 2005. Complaint at ¶¶ 1, 17-23 (Doc. 83).

2. Edwards also alleges that Green violated his constitutional rights by allowing Edwards to confront and fight another inmate on February 28, 2005. Id. at ¶¶ 28-31; Pl.'s Declaration of Nov. 9, 2007 at 1 (Doc. 140, Ex. L-1).

3. Edwards' only specific factual allegation in the complaint against defendant Chuck Dwyer ("Dwyer"), formerly the Superintendent at SECC, is that Dwyer refused to take disciplinary action against Green "even though [he was] aware of her sexual activity with other offenders and staff." Id. at ¶ 65.

---

[2]The Court generally adopts the Defendants' Joint Statement of Undisputed Material Facts (Doc. 143) submitted by defendants after their motions to dismiss were converted to motions for summary judgment. This statement of facts is supported by affidavits and institutional documents. Further, plaintiff has not disputed defendants' statements of the facts because he failed to submit a statement of material facts as to which he contends a genuine issue exists, as required by Local Rule 4.01(E). As a result, for purposes of this motion, plaintiff is deemed to have admitted all facts which were not specifically controverted. See Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999); see also Ridpath v. Pederson, 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material fact, it was deemed admitted under E. D. Mo. Local Rule 4.01(E)). The Court has modified and added certain paragraphs to the Joint Statement of Undisputed Material Facts in order to reflect more fully the facts appearing in the record and, where appropriate, to view the facts in the light most favorable to plaintiff, the nonmoving party.

4. Edwards alleges that defendants John Williams, Dan Martinez, and Cheryl Dowdy, in their capacities as members of SECC's administrative segregation committee, recommended that Edwards be released to the general prison population despite Edwards' protests that this would subject him to a risk of physical retaliation by other prisoners. Id. at ¶¶ 57-59.

5. Edwards alleges that former SECC Investigator Steve Julian directed the SECC librarian to deny Edward access to legal materials after Edwards stated he would file a lawsuit regarding Green. Id. at ¶¶ 50-52.

6. Edwards did not file an informal resolution request regarding his claims against Green until April 7, 2005, approximately two months after the alleged sexual relationship ended and nearly six weeks after the alleged altercation with another inmate. Christy Clinton Aff. at 2, ¶ 10; Informal Resolution Request No. 05-479 at 1 (Ex. A to Clinton Aff.); Doc. 83 at ¶¶ 1, 17-23, 28-31.

7. The grievance procedure of the Missouri Department of Corrections states that a prisoner should file an Informal Resolution Request within 15 calendar days of the alleged incident. See Offender Grievance Procedure, D5-3.2, § III.K.1 at 10 (Ex. A to Doc. 40).

8. On or about May 11, 2005, Edwards filed an offender grievance, No. 05-479, based on his disagreement with the findings in Informal Resolution Request No. 05-479. See Clinton Aff. at 3, ¶ 12.

9. Plaintiff's grievance No. 05-479 was denied on May 24, 2005. See Ex. A to Clinton Aff. at 3.

10. Edwards' signature on the grievance form of No. 05-479 indicates he was informed of the denial on or about June 3, 2005. See id. Edwards checked the box which states, "I appeal this decision." Id.

11. Edwards failed to file any appeal of the denial of grievance No. 05-479. See Clinton Aff. at 3, ¶ 15.

12. Pursuant to the Offender Grievance Procedure referenced in paragraph 7 above, an offender exhausts the grievance process only after he has both filed the grievance appeal and received the appeal response. See Offender Grievance Procedure, D5-3.2, § III.K.1 at 19-20.

13. It is not the policy, practice or procedure of SECC or the MDOC to provide offenders with an "abandonment receipt" when they have abandoned a grievance by failing to file an appeal as required by § III.M.1 of the Offender Grievance Procedure. See Christy Clinton Aff. of January 22, 2008, ¶ 4 ("Second Clinton Affidavit") (Ex. to Def. Green's Reply (Doc. 167)).

14. Edwards was incarcerated at Southeast Correctional Center from June 1, 2004 to August 16, 2005. See Letter of Incarceration of Nov. 17, 2007 (Ex. 7 to Joint Statement of Material Facts, Doc. 143).

15. Edwards was not transferred from Southeast Correctional Center to South Central Correctional Center until August 16, 2005. See id.

16. Edwards filed four internal resolution requests and/or grievances ("grievances") from January 2005 through April 3, 2007. See Clinton Aff. at 2, ¶ 8.

17. The four grievances are numbered 05-479, 05-1429, 05-1479, and 06-296, and copies of the grievances are attached to the Clinton Affidavit. See Exhibit A to Clinton Aff.

18. None of the grievances contain any allegations that (1) defendant Dwyer failed to properly discipline Green, (2) plaintiff was improperly released to general population, or (3) plaintiff was denied access to legal materials. See id.

19.  Plaintiff was refused grievance forms by defendants Williams, Dowdy and Martinez after they attempted to place him in the prison's general population.  Edwards Decl., ¶ 4 (attached to Doc. 119).

20.  Plaintiff was refused grievance forms by caseworking staff when he wanted to file a grievance against defendant Julian.  Edwards Decl., ¶¶ 5-6.

21.  Plaintiff was informed by caseworking staff that he would not be permitted to file any more grievances which involved defendant Green or the actions of other staff who he believed were acting on behalf of Green.  Edwards Decl., ¶ 6.

## IV. Discussion.

### A.  Claims Against Missouri Department of Corrections.

As a threshold matter, plaintiff's Complaint fails to state a claim against the Missouri Department of Corrections ("MDOC").  See, e.g., Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp., 948 F.2d 1084, 1086 (8th Cir. 1991) (agency exercising state power is not "person" subject to § 1983 suit).  As a result, the Complaint will be dismissed as against the MDOC pursuant to 28 U.S.C. § 1915(e)(2)(B).

### B.  Defendant Dwyer's Motion for Summary Judgment.

Defendant Dwyer asserts that plaintiff's only allegation against him is that Dwyer refused to discipline CO Green even though Dwyer was aware of her sexual activity with other offenders and staff.  Complaint at 13, ¶ 65.[3]  Dwyer moves for summary judgment on plaintiff's Complaint on two

---

[3]The Court notes that the Complaint alleges the defendants failed to adequately train and supervise defendant Green.  See Complaint at 16, ¶¶ 79.b. and 79.c.  The Court therefore construes the Complaint for purposes of the instant motion as alleging that defendant Dwyer failed to discipline, train and supervise Green.  In his opposition to the motion to dismiss (Doc. 105), plaintiff states that his allegations that Dwyer failed to take corrective action include that Dwyer failed to refer Green for prosecution.  The Court considers this allegation as part of the claim that Dwyer failed to

grounds: (1) plaintiff has failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a); and (2) plaintiff's claims against Dwyer in his official capacity must be dismissed based on Eleventh Amendment immunity. The Court will address each argument in turn.

### 1. Administrative Exhaustion.

The exhaustion provision of the PLRA states: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To properly exhaust administrative remedies, a prisoner must complete the administrative review process in accordance with the procedural rules as defined by the applicable prison grievance process itself. Jones v. Bock, 127 S. Ct. 910, 922-23 (2007). Compliance with prison grievance procedures is all that is required by the PLRA to properly exhaust. Id. The level of detail necessary to comply with grievance procedures "will vary from system to system and claim to claim[.]" Id. at 923. The Supreme Court also held that the administrative exhaustion requirement is not a heightened pleading requirement, but an affirmative defense that defendants have the burden to plead and to prove. Jones, 127 S. Ct. at 921.

Missouri has developed a three-step procedure for inmates to internally grieve complaints against the Department of Corrections and its staff: informal resolution request ("IRR"), grievance, and grievance appeal. See Missouri Department of Corrections Offender Grievance Procedure D5-3.2, effective date March 11, 2005, Ex. A to Def. Dwyer's Mem. Supp. Mot. Dismiss (Doc. 40). The first step in the procedure is the filing of an IRR. The IRR should be filed within fifteen calendar days of the incident. Id. at 10. If the inmate is not satisfied with the IRR response, he may file an offender

---

discipline Green.

grievance. Id. at 16. The offender grievance must be filed within seven calendar days from the date of the IRR response. Id. at 17. Failure to timely file a grievance results in the complaint being abandoned. Id. The last stage of the offender grievance procedure is the grievance appeal. Id. at 19. An inmate must file an appeal within seven calendar days from the date of the offender grievance response in order to avoid the appeal being deemed abandoned. Id. After the inmate receives the appeal response, the grievance process is considered exhausted. Id. at 21.

Dwyer asserts that although plaintiff filed grievance No. 05-479 on May 12, 2005 (Doc 1-5 at 1), which contained allegations of sexual coercion by Green, plaintiff (1) made no reference to Dwyer by name or title in the grievance, and (2) did not exhaust the grievance. Dwyer cites the Affidavit of Susan Wickliffe in support of his assertion that the grievance was not exhausted. See Ex. A to Mem. Supp. of Green's Mot. to Dismiss (Doc. 28), at ¶ 3. Dwyer also states that while plaintiff referenced the "Superintendent" and "Supt" in grievances No. 05-1429 (Doc. 1-5 at 3), and No. 05-1479 (Doc. 1-5 at 2), none of the grievances contain allegations that Dwyer failed to properly train, supervise or discipline Green.

The Wickliffe Affidavit is unclear. It makes the conclusory averment that plaintiff "did not exhaust his administrative remedies as to his allegations that CO I Green coerced him into a sexual relationship"; Wickliffe Aff., ¶ 3, but also states that plaintiff filed a Grievance Appeal on November 17, 2005 and two Grievance Appeals on December 5, 2005. Id., ¶ 4. As discussed above, the filing of a grievance appeal is the third step in the MDOC grievance process. The Wickliffe Affidavit does not explain its conclusion that plaintiff's grievances were not exhausted, and does not refer to plaintiff's three grievances by number or include any copies of plaintiff's grievance documents, in particular the grievance appeal documents.

The record is clarified, however, by the affidavit of Christy Clinton, an SECC employee whose duties including maintaining the custody and control of the grievance files of inmates assigned to SECC. The Clinton Affidavit states that plaintiff filed four IRRs and/or grievances from January 2005 to the present, Nos. 05-479, 05-1429, 05-1479, and 06-296. Clinton Aff., ¶¶ 7-9. The Clinton Affidavit states that (1) on April 7, 2005, plaintiff filed IRR No. 05-479 in which plaintiff alleged that he was "subjected to coerced sexual abuse by COI Green," (2) on or about May 4, 2005, plaintiff was informed that the subject matter of IRR No. 05-479 was under investigation and that he would not be advised of the outcome of the investigation; (3) on or about May 11, 2005, plaintiff filed a grievance, No. 05-479, based on his disagreement with the findings in the response to IRR No. 05-479; (4) on or about May 24, 2005, grievance 05-479 was denied; (5) on or about June 3, 2005, plaintiff indicated his intention to appeal the denial of the grievance; and (6) plaintiff failed to file an appeal of the denial of grievance No. 05-479. Id., ¶¶ 10-15.

The Court has reviewed the copies of the grievances attached to plaintiff's original complaint. The first grievance, No. 05-479, does not mention Dwyer by name or title, and does not contain any allegations that COI Green was not properly trained, supervised or disciplined. Rather, the gravamen of the grievance is that plaintiff was sexually harassed by Green and wanted prison officials to have Green criminally prosecuted for her actions. (See Doc. 1-5, at 1). The Superintendent's Response to grievance No. 05-479, signed by defendant Dwyer on May 24, 2005, states: "Your complaint is that COI Green has sexually abused you. Your allegations have been reported and are currently under investigation. All matters involving employee discipline are confidential. This should resolve your complaint." (Doc. 1-5, at 1).

Plaintiff's second grievance, No. 05-1429, dated September 22, 2005, states that it was filed against "investigator Jules" (defendant Julian), and alleges in pertinent part that Julian misled plaintiff by telling him that Julian would prosecute COI Green if plaintiff took and passed a polygraph examination, which happened, but no prosecution occurred. The grievance also states, "SECC was instructed to cover up the whole incident after acknowledging my going to litigate" and "I still plan to sue and want COI Tori Green fined/prosecuted." With respect to defendant Dwyer, the grievance states, "Nor has Supt been willing to answer off on final grievance, to stall my filing or hoping I'll change my mind." The second grievance does not contain any allegations that CO Green was not properly trained, supervised or disciplined by Dwyer.

The Superintendent's Response to No. 05-1429, signed by defendant Dwyer on November 2, 2005, states: "Your complaint has been reviewed. D5-3.2, Offender Grievance, states, 'Specific issues or incidents will be addressed only once by informal resolution request or offender grievance.' The issue of harassment by COI Green has already been addressed in SECC-05-479 and will not be address [sic] again." (Doc. 1-5, at 3).

Plaintiff filed the third grievance, No. 05-1479, on September 30, 2005. This grievance relates to the issue of whether plaintiff exhausted his first grievance, No. 05-479, and states in full:

> On 9/31/05 [sic], CCW Wynn brought to my attention that SECC claims that I abandon my grievance. But the record reflexs [sic] on 6/3/05, CCW Mrs. Wyclif [sic] brought me grievance 2nd that I checked the box to continue my appeal. So from 6/3/05 I have 100 days at the last stage which would mean my last response would be around the second week of Oct. 05. In fact, I have my own copy and it reflexs [sic] I did not abandon my complaint. This is just another attempt by SECC & its Superintendent and investigators to cover-up the sexual coercion by COI Tori Green. Understand right now, Superintendent, come Oct I will file my litigation against you, MDOC, and COI Tori Green. I'm not playing a game with your negligence and incompetence. Note: I have also wrote State Rep. Jenee Lowe, and Inspector General, got over 30-40 letters, even these photo-copied by your investigator that reflexs [sic] my adamant desire to prosecute.

(Doc. 1-5 at 2).

The third grievance does not contain any allegations that COI Green was not properly trained, supervised or disciplined by Dwyer. The Superintendent's Response, signed by Dwyer on November 2, 2005, states: "Your complaint has been reviewed. D5-3.2, Offender Grievance, states, 'Specific issues or incidents will be addressed only once by informal resolution request or offender grievance.' The issue of harassment by COI Green has already been addressed in SECC-05-479 and in SECC-05-1429 and will not be address [sic] again." (Doc. 1-5, at 2).

The Supreme Court held in Jones that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." Jones, 127 S. Ct. at 923. Nothing in the applicable MDOC Offender Grievance Procedure requires a prisoner to name any particular individual(s) in a grievance. Based on Jones and the text of the Offender Grievance Procedure, plaintiff's failure to name Dwyer in the grievances, by itself, is not dispositive and does not establish a failure to exhaust administrative remedies.

The Supreme Court reiterated, however, that no unexhausted claim may be considered under the PLRA. Jones, 127 S. Ct. at 924-25; see 42 U.S.C. § 1997e(a). The Court instructed that unexhausted claims should be dismissed and the rest of the case proceed. Id. at 925-26. Here, although plaintiff's claims against Dwyer arise from the allegations that Green sexually harassed plaintiff, the grievances filed by plaintiff, as discussed above, do not mention Dwyer's alleged failure to train, supervise or discipline Green.

The first grievance, No. 05-479, does not mention or concern Dwyer in any way. Dwyer is mentioned by title in the second grievance, No. 05-1429, when plaintiff states, "Nor has Supt been willing to answer off on final grievance, to stall my filing or hoping I'll change my mind." The

Complaint does not allege that Dwyer failed to process plaintiff's grievances, however, and the Court notes that prison officials' failure to process grievances is not actionable under Section 1983. See Buckley v. Barrow, 997 F.3d 494, 496 (8th Cir. 1993).

Dwyer is mentioned by name in the third grievance, No. 05-1479, in which plaintiff asserts that his first grievance was not abandoned and claims that the allegations he abandoned the first grievance were an effort by Dwyer and others to cover up Green's sexual misconduct. The Complaint, however, does not allege a cover up or a failure to process grievance appeals, but rather asserts that Dwyer failed to train, supervise or discipline Green.[4]

Accordingly, the Court concludes that plaintiff has not exhausted his claims against defendant Dwyer and that summary judgment should be entered in Dwyer's favor. Cf. McKinzie v. Clubbs, 2007 WL 1992408, No. 4:06-CV-994 DJS (E.D. Mo. July 3, 2007) (although claims of a cover up, inadequate investigation and failure to take corrective action against certain defendants arose out of an incident in which a correctional officer allegedly pushed plaintiff down a flight of stairs, where plaintiff's grievance materials did not mention these defendants' alleged efforts to cover up the incident, inadequate investigation, or failure to take corrective action, plaintiff had not exhausted his claims against them). As a result of this conclusion, the Court does not address Dwyer's argument

---

[4]The meaning of plaintiff's third grievance is not entirely clear. Plaintiff states in the grievance that he "checked the box to continue my appeal. So from 6/3/05 I have 100 days at the last stage which would mean my last response would be around the second week of Oct. 05." It is possible plaintiff believed that by checking the box labeled, "I appeal this grievance," he was actually filing a grievance appeal, as the Grievance Procedure requires that an appeal response be filed within 100 calendar days of receipt. § III.M.6. The Offender Grievance Procedure provides, however, that to appeal the denial of a grievance, an offender must submit a Offender Grievance Appeal form within seven calendar days of receiving the denial. § III.M.1. As discussed later in this opinion, the Court finds that plaintiff did not submit a grievance appeal.

concerning Eleventh Amendment immunity with respect to the claims against him in his official capacity.

**C. Defendant Green's Motion for Summary Judgment**.

Defendant Green moves for summary judgment on plaintiff's Complaint on the basis that he failed to exhaust administrative remedies in two respects: (1) plaintiff's Informal Resolution Request No. 05-479, step one of the grievance process, was not timely filed; and (2) plaintiff failed to file a grievance appeal of the denial of his grievance No. 05-479. In support of the motion, defendant Green submits the affidavit of Christy Clinton, whose official duties include maintaining the grievance records at SECC.

With respect to the issue of timeliness of IRR No. 05-479, Green states that the Complaint alleges she coerced plaintiff into a sexual relationship in December 2004 lasting until sometime in January 2005, and that on February 28, 2005, Green "allowed" plaintiff to "confront" and "engage in physical combat" with another inmate Green was involved with and who had threatened plaintiff. Complaint, ¶¶ 17, 24, 28-31. Green states that plaintiff did not file an IRR regarding any claims against her until April 7, 2005, approximately two months after the alleged sexual relationship ended and nearly six weeks after the alleged altercation with the other inmate. See Clinton Aff., ¶ 10.

Green asserts that under the MDOC grievance procedure, a prisoner must file an IRR within fifteen (15) calendar days of the alleged incident, citing Offender Grievance Procedure D5-3.2, § III.K.1 (Doc. 40, at 11). Green asserts that by failing to comply with the time limits of the Offender Grievance Procedure, plaintiff failed to properly exhaust his claims against her, and has forfeited any right of action in federal court.

Green also asserts that plaintiff has defaulted his claims by failing to file a grievance appeal. Green states that plaintiff's grievance, filed May 11, 2005, was denied on May 24, 2005. Plaintiff's signature on the grievance form indicates he was informed of the denial on or about June 3, 2005, and plaintiff indicated that he wished to appeal, but did not file an appeal. Clinton Aff., ¶ 15. Green therefore argues that plaintiff has failed to exhaust his administrative remedies, and the claims against her must be dismissed.

The Court will address Green's two administrative exhaustion arguments separately.

1. Timeliness of IRR.

The MDOC Offender Grievance Procedure states that an IRR "should" be filed within fifteen calendar days of the incident. Grievance Procedure, § III.K.1. It is undisputed that plaintiff's IRR against defendant Green in No. 05-479 was filed more than fifteen days after the occurrence of any of the matters alleged in his Complaint. The language of Grievance Procedure § III.K.1. is not mandatory, however. Section III.K.1 states only that an offender should file an IRR within fifteen days, not that he must file within that time. Based on the language of the Grievance Procedure, the Court rejects Green's argument that plaintiff forfeited his right of action by failing to file an IRR within fifteen days.

2. Failure to File Grievance Appeal.

Green has submitted the affidavit of the SECC grievance administrator, which states that plaintiff did not exhaust grievance No. 05-479 by filing a grievance appeal, step three of the MDOC grievance procedure. Although plaintiff's initial response to Green's motion to dismiss did not respond to the merits of Green's motion (see Doc. 111),[5] in responding to Dwyer's motion to dismiss,

_____

[5]Plaintiff filed a single response that addressed the motions to dismiss of both Dwyer and Green. (See Doc. 111). Plaintiff did not respond to Green's timeliness arguments, but asserted a

plaintiff stated that after he filed grievance No. 05-479, he was transferred to the South Central Correctional Center ("SCCC") in Licking, Missouri, where he was placed in administrative segregation. See Pl.'s Response in Opp. to Dwyer Mot. at 3 (Doc. 105). Plaintiff stated that he notified prison officials of the pending grievance and that he needed an appeal form to appeal Dwyer's response, but officials refused to provide the form to him at that time. Id. Plaintiff stated that during a second attempt to obtain the form, he was informed by the SCCC Grievance Officer that plaintiff had abandoned the claim by not filing the grievance appeal within the time allowed under the grievance policy. Id. Thus, plaintiff contends that he did all he could do to complete the grievance process and that prison officials' failure to provide him with the necessary appeal forms "halted the process." Id.

The Eighth Circuit has held that prison officials' refusal to provide grievance forms or to respond to grievances can be a basis for a prisoner to show that he exhausted "available" administrative remedies. See Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) (district court lacked sufficient factual basis to find inmate failed to exhaust administrative remedies when prison officials had refused to respond to informal resolution request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy that prison officials prevent inmate from using is not "available" remedy

procedural argument that Green and Dwyer were in default. Plaintiff's argument is incorrect. In response to a complaint, a party may file an answer or a motion to dismiss setting forth the defenses listed in Rule 12(b), or both. A plaintiff cannot obtain a default judgment where the defendants have filed a motion to dismiss and their answer was not yet due. See Rule 12(a)(4)(A), Fed. R. Civ. P. When the court denies a motion filed under Rule 12, or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action. Rule 12(a)(4)(A), Fed. R. Civ. P. Thus, in this case, defendants Green and Dwyer's answers would not be due until the Court were to deny their motions to dismiss, now construed as motions for summary judgment.

under § 1997e(a); inmate's allegations that prison failed to respond to his requests for grievance forms were sufficient to raise inference that he had exhausted available remedies).

Plaintiff's assertion that he was denied a grievance appeal form following transfer appears only in his unverified opposition to Dwyer's motion to dismiss, and is not contained in a declaration or other document signed under penalty of perjury.[6] When ruling on a summary judgment motion, the Court may consider only the portion of submitted materials which would be admissible or usable at trial. Walker v. Wayne County, Iowa, 850 F.2d 433, 434 (8th Cir. 1988). "[U]nsworn arguments are not evidence." Stringer v. St. James R-1 Sch. Dist., 446 F.3d 799, 804 (8th Cir. 2006) (cited case omitted). Therefore, plaintiff's assertion that he was denied a grievance appeal form is not admissible evidence the Court can consider on summary judgment, and it is also refuted by uncontroverted evidence submitted by Green.

After the motion to dismiss was converted to a motion for summary judgment, defendant Green submitted a supplemental memorandum in support of her motion for summary judgment (Doc. 146). Green submits evidence that plaintiff was incarcerated at SECC throughout the entire grievance process for No. 05-479, from the filing of the informal resolution request, through the filing of the grievance, and plaintiff's acknowledgment of the grievance denial on June 3, 2005. . See Letter of Incarceration of Nov. 17, 2007 (Ex. 7 to Joint Statement of Material Facts, Doc. 143). Green states

---

[6]The Court notes that neither plaintiff's original complaint nor the First Amended Complaint are verified or signed under penalty of perjury. In fact, the original complaint does not bear a signature at all. Accordingly, the Court does not treat either pleading as an affidavit in opposition to defendants' motions. Cf. Roberson v. Hayti Police Dept., 241 F.3d 992, 994-95 (8th Cir. 2001) (a plaintiff's verified complaint is the equivalent of an affidavit in opposition to a motion for summary judgment, and a complaint signed under penalty of perjury pursuant to 28 U.S.C. § 1746 is the equivalent of a verified complaint a complaint signed under penalty of perjury).

that plaintiff was not transferred to SCCC until August 16, 2005, more than two months after the grievance appeal deadline had passed. See id.

Plaintiff filed a supplemental memorandum in opposition to Green's motion for summary judgment (Doc. 164). In this document, plaintiff changes course, and states that he "recalled giving his Grievance Appeal to prison officials and was under the impression he had 100 days to await responses from Grievance Officer." Pl.'s Suppl. Mem. Opp. at 1. Plaintiff now asserts that he "was given a Grievance Appeal. Plaintiff filled it out the Grievance Appeal and prison official took it with him to give to caseworker the same day. So plaintiff was under the impression his Grievance Appeal was turned in." Id. at 1. Plaintiff also states that under MDOC grievance policy, after seven days had elapsed he should have been given an "abandonment receipt," but no prison official or grievance officer notified plaintiff that his grievance was abandoned. Pl.'s Suppl. Mem. Opp. at 1-2. As with the earlier response, plaintiff's supplemental memorandum was neither verified nor signed under penalty of perjury.

As stated above, defendant Green submitted the Clinton affidavit, which avers that plaintiff never filed a grievance appeal of grievance No. 05-0479. Plaintiff offered two conflicting and mutually exclusive responses to this evidence, neither of which was verified or signed under penalty of perjury. First, plaintiff asserted that he was transferred from SECC to SCCC before the grievance appeal was due, and SCCC officials refused to provide him with a grievance appeal form. In response, the defendants submitted uncontroverted evidence to show that plaintiff remained at SECC throughout the time period when he was required to file the grievance appeal. Second, in response to Green's supplemental memorandum in support, plaintiff asserts that he filled out a grievance appeal form and turned it in to prison officials at SECC. Plaintiff does not provide an affidavit or declaration

signed under penalty of perjury to support this assertion, nor did he submit a copy of his grievance appeal.[7] Plaintiff's unsworn assertion that he filed a grievance appeal does not raise an issue of material fact as to administrative exhaustion, in the face of a sworn affidavit from the custodian of the grievance records that plaintiff did not file a grievance appeal.

Plaintiff's assertion that prison officials failed to notify him in a timely manner that his grievance was abandoned does not preclude the entry of summary judgment. Plaintiff has not cited, and the Court cannot find in the Offender Grievance Procedure, any requirement that prison officials notify an offender that his grievance was abandoned for failure to file a grievance appeal. Green submits the Second Clinton Affidavit, which avers that it is not the policy or procedure of SECC or the MDOC to issue an "abandonment receipt" when an offender fails to file a grievance appeal as required by §III.M.1 of the MDOC Grievance Procedure.

Proper exhaustion under the MDOC Offender Grievance Procedure requires the filing of an IRR, a grievance, and a grievance appeal. The responsibility lies with the offender to complete all three steps of the grievance procedure. Defendants have established that plaintiff did not file a grievance appeal of grievance No. 05-479. Therefore, the Court concludes that plaintiff failed to comply with the three-step grievance procedure established by the MDOC, and as a result has not exhausted administrative remedies with respect to defendant Green. See Jones, 127 S. Ct. at 922-23. No unexhausted claim may be considered under the PLRA. Id. at 924-25; 42 U.S.C. § 1997e(a). Accordingly, Green's motion to dismiss for failure to exhaust administrative remedies, construed as a motion for summary judgment, should be granted.

---

[7]Plaintiff has been able to provide the Court with multiple copies of all the other grievance-related documents in this matter.

**D. Remaining Defendants' Motion for Summary Judgment**.

Defendants John Williams, Cheryl Dowdy, Dan Martinez and Steve Julian (collectively referred to as the "individual defendants") move for summary judgment on plaintiff's claims against them for failure to exhaust administrative remedies. The individual defendants in their official capacities also move for judgment based on Eleventh Amendment immunity.

In the Complaint, plaintiff alleges that defendants Williams, Dowdy, and Martinez, in their capacities as members of the administrative segregation committee, recommended that plaintiff be released to SECC's general population despite plaintiff's protests that this release would subject him to a risk of physical retaliation by other prisoners. (Doc. 83, ¶¶ 57-59). Plaintiff also alleges that former SECC Investigator Steve Julian directed the SECC librarian to deny plaintiff access to legal materials after plaintiff told Julian he would file a lawsuit regarding Green. (Doc. 83, ¶¶ 50-52).

      1. <u>Administrative Exhaustion</u>.

The individual defendants assert that plaintiff did not exhaust his administrative remedies with respect to his claims against them because none of the four grievances filed by plaintiff contain any allegations that plaintiff was improperly released to the general population or that plaintiff was denied access to legal materials. The defendants note that in grievance No. 06-296 plaintiff alleges that "Investigator [Julian] attempted to release me back into [general population] to use me as bait," but assert that this grievance was filed on February 23, 2006, subsequent to the filing of this action. Thus, the individual defendants contend that plaintiff has not exhausted his administrative remedies with respect to his claims against them and that they are entitled to judgment as a result.

Plaintiff responds that he "continually attempted to file claims regarding the actions/inactions taken by these officials" but that in each instance, he was informed in writing that "claims relating to

the circumstances revolving around the actions of Tori Green would not be addressed 'again.'" Pl.'s Opp. at 3 (Doc. 119). Plaintiff therefore contends he was "denied access to the grievance procedure for this purpose." Id. Plaintiff also states that the grievance responses indicated that no information or result of the investigation would be disclosed to him. Plaintiff concludes that "[t]his being the case, there was nothing more plaintiff could do to exhaust the claims defendants now claim are not exhausted." Id. Plaintiff states that he "informed prison officials that he was not filing directly in regard to defendant Green, but rather, the actions of other prison officials who were acting either on her behalf (harassment) or as a result of plaintiff having Green investigated." Id.

In support of his response, plaintiff submits his Declaration signed under penalty of perjury. Edwards Decl. of May 16, 2007 (attached to Doc. 119). In the Declaration, plaintiff states, inter alia, that as a direct result of his reporting Green's actions, Williams, Dowdy and Martinez attempted to place him in the prison's general population where they knew he would be harmed. Plaintiff states, "I attempted to file a grievance regarding this issue but was refused the necessary forms by these defendants."[8] Edwards Decl., ¶ 4. Defendants Williams, Dowdy and Martinez have not made any response to plaintiff's Declaration.

Plaintiff also states in the Declaration that during the course of the investigation, defendant Julian informed him that no action would be taken against Green. Plaintiff states that he responded he would file a lawsuit if no action was taken against Green. Julian picked up the telephone and called the institutional librarian and instructed her not to provide plaintiff with any legal research

---

[8]There is no evidence in the record as to whether defendants Williams, Dowdy and Martinez were staff members responsible for processing informal resolution requests. Grievance Offender Procedure § III.K.1.a. states, "The offender should request an Informal Resolution Request form from the staff member responsible for processing informal resolution requests and should state the subject of the complaint."

materials. Plaintiff told Julian that he was going to file a grievance against him, and Julian responded, "Good luck." Edward Decl., ¶ 5. Plaintiff then states, "Thereafter when I attempted to gain a grievance form I was denied by caseworking staff. I was also informed by caseworking staff that I would not be permitted to file any more grievances which involved Tori Green or the actions of other staff who I believed were acting on behalf of Green." Id., ¶ 6. Defendant Julian did not respond to these assertions in plaintiff's Declaration.

On summary judgment, a court considers only admissible evidence and disregards portions of affidavits or declarations that consist of hearsay. See Shaver v. Independent Stave Co., 350 F.3d 716, 723 (8th Cir. 2003); Fed. R. Civ. P. 56(e). The Court therefore does not consider the portions of Edwards' Declaration that consist of inadmissible hearsay. Nonetheless, based on the record before it, the Court finds that plaintiff has raised an issue of fact as to whether prison officials refused to provide him with grievance forms with respect to his claims against defendants Williams, Dowdy and Martinez, and his claim against defendant Julian. Therefore, plaintiff has raised an issue of fact as to whether prison officials prevented him from using the grievance procedure remedy with respect to the individual defendants. See Miller, 247 F.3d at 740 (remedy that prison officials prevent inmate from using is not "available" remedy under § 1997e(a)). The individual defendants' motion for summary judgment based on failure to exhaust administrative remedies should therefore be denied without prejudice.

### 2. Eleventh Amendment Immunity.

The individual defendants also argue that they are not subject to suit under § 1983 in their official capacities, based on Eleventh Amendment immunity. Plaintiff responds that the Eleventh Amendment does not bar a federal court from issuing an injunction ordering a state official to comply

with federal law in the future, and asserts that the relief he seeks against these defendants in their official capacities is prospective and injunctive and therefore is not barred by the Eleventh Amendment.

A claim against a public official in his or her official capacity is merely another way of pleading an action directly against the public entity itself. Hafer v. Melo, 502 U.S. 21, 25 (1991). It is well established that states and state officials acting in their official capacities are not "persons" within the meaning of 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). As a result, suits against public officials in their official capacity should be treated as suits against the public entity. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)).

The Eleventh Amendment prohibits the imposition of monetary damages against the state, or against state officials in their official capacities. Edelman v. Jordan, 415 U.S. 651, 663 (1974); DeYoung v. Patten, 898 F.2d 628, 635 (8th Cir. 1990). Consequently, plaintiff's claims for monetary damages against the individual defendants in their official capacities are barred by the Eleventh Amendment. The claims against the individual defendants in their official capacity should therefore be dismissed. Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001).

Plaintiff asks for unspecified injunctive and declaratory relief in the Complaint. (See Complaint at 18, ¶ 85). Under the doctrine set forth in Ex Parte Young, 209 U.S. 123 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment.[9] See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102-03

_____

[9]The Ex Parte Young doctrine does not extend to states or state agencies. Monroe v. Arkansas State Univ., 495 F.3d 591, 594 (8th Cir. 2007); see also Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985). Therefore, plaintiff also could not assert claims for injunctive and declaratory relief against the MDOC itself.

(1984). Plaintiff cannot successfully bring a claim for injunctive or declaratory relief against officials at SECC, however, because he was transferred to the South Central Correctional Center before filing this action (see Complaint, ¶ 65) and was thereafter transferred to the Eastern Missouri Reception Diagnostic and Correctional Center, (see Doc. 78, Notice of Change of Address), and most recently to the Crossroads Correctional Center. (See Doc. 153, Notice of Change of Address).

A prisoner's claim for equitable relief against prison conditions is rendered moot by the inmate's transfer to another institution. See Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (holding that inmate's First Amendment claim that prison officials denied him items for the practice of his religion was mooted when the inmate was transferred); Pool v. Missouri Dept. of Corrections and Human Resources, 883 F.2d 640, 644 (8th Cir. 1989); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding inmate's claim for injunctive and declaratory relief to improve prison conditions were mooted by inmate's transfer to another institution). Thus, plaintiff's claims for injunctive and declaratory relief against the individual defendants should be dismissed as moot.

Plaintiff's claims against defaulting defendants Vance and Cobbs in their official capacities should also be dismissed based on Eleventh Amendment immunity, on the Court's own motion, as plaintiff's claims against the individual defendants in their official capacities are being dismissed on that basis. See Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc., 370 F.3d 715, 722 (8th Cir. 2004) ("a judgment on the merits for the answering party should accrue to the benefit of the defaulting party."). Plaintiff's claims against Vance and Cobbs for declaratory and injunctive relief should also be dismissed as moot, for the same reasons these claims were dismissed against the other defendants. See id.

**E. Plaintiff Fails to State a Claim against Defendant Julian**.

As stated above, plaintiff's claim against defendant Julian is that Julian directed the SECC librarian to deny plaintiff access to legal materials after plaintiff stated he would file a lawsuit regarding Green. Complaint at ¶¶ 50-52. These allegations fail to state a claim upon which relief can be granted, and therefore plaintiff's claims against Julian will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Prisoners have a constitutional right of meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). The central concern is protecting prisoners' rights to prepare petitions or complaints. Id. at 828 n.17 (citing Wolff v. McDonnell, 418 U.S. 539, 576 (1974)). "To prevail on a claim for denial of access to the courts, a plaintiff must show he or she suffered actual injury as a result of defendants' actions." Lewis v. Casey, 518 U.S. 343, 353 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007) (quoting Lewis, 518 U.S. at 353).

In the instant case, plaintiff's allegation that Julian directed the law librarian to deny plaintiff access to legal materials does not establish that plaintiff was denied law library resources such that a nonfrivolous legal claim was actually prejudiced. Plaintiff does not allege that he was actually denied access to legal materials, or that he was frustrated or impeded in his ability to file a lawsuit or to prosecute a suit that was already pending. The Court notes that plaintiff was able to successfully file this action against Green, Julian and others, and therefore it is apparent plaintiff is not being prevented from meaningful access to the courts. Because plaintiff fails to allege actual injury and has

not demonstrated any impediment to his pursuit of this suit or any other suit or petition, this claim is meritless.  See Lewis, 518 U.S. at 353.

Although plaintiff has alleged facts which, if true, could possibly constitute a wrong, he has not, for the reasons outlined above, articulated any manner in which he was injured by the offense. "Absent an articulation of how the alleged wrongful conduct actually blocked [plaintiff's] access to filing a complaint, or caused a filed complaint to be deficient, [plaintiff's] alleged injuries are merely speculative." Hartsfield v. Nichols, __ F.3d __, No. 06-3450, 2008 WL 65598, *6 (8th Cir. Jan. 8, 2008).  Because no further explanation of the facts alleged could change this speculation, the Court finds it appropriate to dismiss plaintiff's claim against Julian pursuant to 28 U.S.C. § 1915(e)(2)(B).

**F.  Plaintiff's Motion for Summary Judgment**.

After the Court converted the defendants' motions to dismiss to motions for summary judgment, plaintiff filed a motion for summary judgment against all of the non-defaulting defendants. Plaintiff's motion for summary judgment asserts that he "present[s] genuine issues of material facts which refute Defendants' Motion to Dismiss of Plaintiff stating no claim, and failure to exhaust administrative remedies as required by 42 U.S.C. § 1997(e)(a)."  Pl.'s Mot. for Summ. J. at 1. Plaintiff's motion for summary judgment then lists all of the exhibits submitted in support of the motion, and states that the defendants have refused to provide answers to certain discovery requests that he submitted to them.  Plaintiff concludes, "Defendants presents [sic] no genuine issues of material fact which can refute Plaintiff's claims against them; and therefore plaintiff should be entitled to summary judgment against 'all' defendants as a matter of law."  Pl.'s Mot. for Summ. J. at 3.  The defendants filed no response to plaintiff's motion for summary judgment.

The Court has considered the exhibits plaintiff submitted in support of his motion for summary judgment both in support of plaintiff's motion for summary judgment and in opposition to the defendants' motions for summary judgment. Plaintiff does not meet his burden to establish that no genuine issues of material fact remain or that he is entitled to judgment as a matter of law on any of his claims that remain in this case. Plaintiff's motion for summary judgment will therefore be denied without prejudice.[10]

### G. Plaintiff's Motion for Discovery.

Plaintiff also filed a motion requesting that discovery be conducted in this case, noting that he sent a request for production of documents to counsel for defendant Green on June 6, 2006, and thereafter the judge to whom this case was previously assigned stayed the case pending resolution of the defendants' motions to dismiss. (See Order of Oct. 11, 2007, Doc. 72). On February 20, 2007, the prior judge granted plaintiff's motion for leave to file his First Amended Complaint, denied the motions to dismiss the original complaint as moot, and ordered the stay lifted. (See Order of Feb. 20, 2007 at 6, Doc. 82). Plaintiff asserts that he never received the documents he requested. The Court notes that documents filed by plaintiff show that defendant Green responded to plaintiff's discovery request by submitting objections.

---

[10]Plaintiff's motion for summary judgment includes a certificate of service which states that a copy of the motion was sent to the "United States District Court, Clerk of Court." The Court has previously instructed plaintiff that he must send a copy of any documents that he files with the Court to the defendants' counsel. See Order of Nov. 20, 2007 [Doc. 148]; see also Federal Rules of Civil Procedure 5(a), 5(d)(1). Plaintiff's motion for summary judgment was accompanied by approximately fifty pages of exhibits, many of which are handwritten and/or copies, and would likely be illegible if electronically scanned. Because of the nature and volume of these exhibits, the Clerk has maintained the exhibits in paper format and did not electronically scan them into the record. As a result, the defendants have not seen the exhibits to plaintiff's motion for summary judgment. Because the Court concludes that plaintiff's motion should be denied, plaintiff's failure to send the defendants a copy of his motion and exhibits is a moot point. In the future, however, plaintiff must send a copy of all materials filed in this case to the defendants.

The instant Memorandum and Order dismisses plaintiff's claims against defendants Green, Dwyer, Julian and the Missouri Department of Corrections. It is not clear whether plaintiff's prior discovery requests were directed to any of the remaining defendants, as opposed to defendants who have now been dismissed. In any event, at an appropriate time in the future the Court will issue a standard Track 5B Case Management Order (Scheduling Order) by separate order, which will establish deadlines for discovery and dispositive motions on plaintiff's remaining claims. Plaintiff's motion for discovery should therefore be denied.

## V.  Conclusion.

For the foregoing reasons, on the Court's own motion, plaintiff's claims against the Missouri Department of Corrections should be dismissed. The Court concludes that defendants Dwyer and Green's motions to dismiss, construed as motions for summary judgment, should be granted based on plaintiff's failure to exhaust administrative remedies. As a result, plaintiff's motion for a physical examination of Green should be denied as moot. Defendants Williams, Dowdy, Martinez, and Julian's motion to dismiss, construed as a motion for summary judgment, should be denied as to plaintiff's claims against defendants Williams, Dowdy, Martinez and Julian in their individual capacities, and granted as to plaintiff's claims against the individual defendants in their official capacities. On the Court's own motion, plaintiff's claims against defendant Julian in his individual capacity should be dismissed for failure to state a claim upon which relief can be granted. Also on the Court's own motion, plaintiff's claims against defendants Vance and Cobbs in their official capacities should be dismissed. Plaintiff's claims for injunctive and declaratory relief against defendants Williams, Dowdy, Martinez, Julian, Vance and Cobbs should be dismissed as moot.

Plaintiff's motion for summary judgment should be denied without prejudice. Plaintiff's motion for discovery should be denied.

Remaining in this case are plaintiff's claims against (1) defendants Williams, Dowdy and Martinez in their individual capacities for money damages, based on their alleged recommendation as members of the administrative segregation committee that plaintiff be released to SECC's general population, knowing this would endanger plaintiff (see Complaint, Doc. 83, ¶¶ 57-59); and (2) defaulting defendants Vance and Cobbs in their individual capacities for money damages. No other claims remain.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's claims against the Missouri Department of Corrections are **DISMISSED**. 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that defendant Dwyer's motion to dismiss, construed as a motion for summary judgment, is **GRANTED** for failure to exhaust administrative remedies. [Doc. 103]

**IT IS FURTHER ORDERED** that defendant Green's motion to dismiss, construed as a motion for summary judgment, is **GRANTED** for failure to exhaust administrative remedies. [Doc. 107]

**IT IS FURTHER ORDERED** that plaintiff's motion for physical examination of defendant Green is **DENIED as moot**. [Doc. 106]

**IT IS FURTHER ORDERED** that defendants Williams, Dowdy, Martinez and Julian's motion to dismiss, construed as a motion for summary judgment, is **GRANTED in part** and **DENIED in part**; said motion is **DENIED** with respect to plaintiff's claims against Williams,

Dowdy, Martinez and Julian in their individual capacities for money damages, and **GRANTED** with respect to Williams, Dowdy, Martinez and Julian in their official capacities based on Eleventh Amendment immunity. [Doc. 113]

**IT IS FURTHER ORDERED** that plaintiff's remaining claims against defendant Julian are **DISMISSED** for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants Vance and Cobbs in their official capacities are **DISMISSED**, based on Eleventh Amendment immunity.

**IT IS FURTHER ORDERED** that plaintiff's claims for declaratory and injunctive relief against all defendants are **DISMISSED** as moot.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment is **DENIED** without prejudice. [Doc. 144]

**IT IS FURTHER ORDERED** that plaintiff's motion for discovery is **DENIED** as moot. [Doc. 142]

An appropriate partial judgment and order of dismissal will accompany this memorandum and order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this _25th_ day of January, 2008.